UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

WOLVERINE FIREWORKS DISPLAY et al.,

    Plaintiffs,

v.

KAREN E. TOWNE, Acting Michigan State
Fire Marshal, in her official capacity

    Defendant.
_____/

Case No. 12-10426
Hon. Thomas L. Ludington

**ORDER DIRECTING SUPPLEMENTAL BRIEFING**

This case arises out of a constitutional challenge to the Michigan Fireworks Safety Act, Mich. Comp. Laws §§ 28.451–471, enacted effective January 1, 2012. The plaintiffs, a group of fireworks vendors, challenge the Act's requirement that vendors selling certain types of fireworks (such as roman candles, bottle rockets, and other fireworks of like construction) purchase liability insurance "in an amount not less than $10,000,000.00 per occurrence." § 28.455(d)(3). As an initial matter, Plaintiffs move for a preliminary injunction preventing enforcement of the insurance requirement. Plaintiffs' motion is currently set for a hearing on June 7, 2012. For the following reasons, the Court will order supplemental briefing on the motion.

**I**

**A**

The Michigan Fireworks Safety Act is not the first instance of Michigan regulating fireworks sales. For the forty years prior to January 1, 2012, fireworks sales were governed by Chapter 34 of the Michigan Penal Code, Mich. Comp. Laws §§ 750.243–750.243e (repealed

effective Jan. 1, 2012); *see generally Burda Bros., Inc. v. Walsh*, 22 F. App'x 423, 426 (6th Cir. 2002) (providing "a brief description of the relevant Michigan fireworks law" under Chapter 34).

Under Chapter 34, fireworks vendors were prohibited from selling "roman candles . . . bottle rockets . . . or other fireworks of like construction" for private use. Mich. Comp. Laws § 750.243a(c). (As discussed below, such fireworks could be sold "for public display.")

The responsibility for regulating firework vendors was largely delegated to local governments. Section 750.243a provided in pertinent part:

> 2. Except as provided in subsection (3) and [§§ 750.243b, 750.243c, and 750.243d], a person, firm, partnership, or corporation shall not offer for sale, expose for sale, sell at retail, keep with intent to sell at retail, possess, give, furnish, transport, use, explode, or cause to explode . . .
>
>    c. firecrackers, torpedoes, skyrockets, roman candles, daygo bombs, bottle rockets, whistling chasers, rockets on sticks, or other fireworks of like construction. . . .
>
> 3. A permit is not required for the following . . .
>
>    c. Sparklers containing not more than .0125 pounds of burning portion per sparkler.
>
>    d. Flitter sparklers in paper tubes not exceeding [one-eighth] inch in diameter, cone fountains, and cylinder fountains.
>
>    e. Toy snakes not containing mercury, if packed in cardboard boxes with not more than 12 pieces per box . . . .

§ 750.243a(2)–(3) (repealed effective Jan. 1, 2012).

Section 750.243b, in turn, authorized local governments to grant permits for fireworks otherwise prohibited under § 750.243a for "public display," providing:

> 1. [Local governments] may grant a permit for the use of fireworks otherwise prohibited by section 243a, within their political jurisdiction . . . for public display by municipalities, fair associations, amusement parks, or other organizations or groups of individuals approved by the city, village, or township . . . .

2. [Local governments] may grant a permit . . . to a resident wholesale dealer or jobber to have in his or her possession within the political jurisdiction, fireworks otherwise prohibited by section 243a, for sale only to holders of permits as provided in this section.

3. Before a permit . . . is issued, the person, firm, or corporation making application therefore shall furnish proof of financial responsibility by a bond or insurance in an amount deemed necessary by the local governing authority to satisfy claims for damages to property or personal injuries arising out of an act or omission on the part of the person, firm, or corporation, or an agent or employee thereof, in the amount, character, and form the local authority determines necessary for the protection of the public.

§ 750.243b(1)–(3) (repealed effective Jan. 1, 2012).

To summarize, under Chapter 34 private persons were not permitted to "possess, . . . use, explode, or cause to explode . . . firecrackers, torpedoes, skyrockets, roman candles, daygo bombs, bottle rockets, whistling chasers, rockets on sticks, or other fireworks of like construction." § 750.243a(2). Consequently, fireworks vendors could not sell such fireworks to private persons.

Vendors could sell to "groups of individuals," but only if the vendors obtained a permit from the local government. § 750.243b(1). To receive a permit, the applicant was required to "furnish proof of financial responsibility by a bond or insurance in an amount deemed necessary by the local governing authority." § 750.243b(3).

Moreover, the fireworks could not be sold for private use — they had to be for "public display." *See generally* George E. Ward & Raymond P. Walsh, *Fireworks Law: It's Not that Complicated*, 75 Mich. B.J. 413, 414 (1996) ("Last season, a seller of fireworks in Canton Township sought such a permit on behalf of a 'group of individuals' whom it claimed would stage a public display of their purchased fireworks on July 4th. Canton Township denied the application because the 'group of individuals' was the seller's own retail customers; the customers took immediate possession of the fireworks at the time of the sale; and the idea that all

of the fireworks purchased would be held intact, and that all of the buyers would show up on July 4th to set them off as a group, was utterly fanciful.").

**B**

Effective January 1, 2012, the Michigan legislature repealed these restrictions. In their place, the legislature enacted the Michigan Fireworks Safety Act. The Act broadens the availability of fireworks to consumers in Michigan, permitting the sale of fireworks for private use. But the Act also requires the vendors to maintain a significant amount of liability insurance. Specifically, "each retail location selling consumer fireworks either shall be added as an additional insured, or public liability and product liability insurance coverage shall be obtained and maintained, in an amount not less than $10,000,000.00 per occurrence." Mich. Comp. Laws § 28.455(3)(d).

"Consumer fireworks" is a defined term under the Act; it "means fireworks devices that are designed to produce visible effects by combustion, that are required to comply with the construction, chemical composition, and labeling regulations promulgated by the United States consumer product safety commission under 16 CFR parts 1500 and 1507, and that are listed in APA standard 87-1, 3.1.2, 3.1.3, or 3.5." Mich. Comp. Laws § 28.452(e). The "APA standards" referenced are the definitions promulgated by the American Pyrotechnics Association. For example, among the fireworks defined in standard 3.1.2, "Aerial Devices," are "bottle rocket" and "roman candle." APA standards 3.1.2.3, 3.1.2.4.

The Act also provides that the definition of "consumer fireworks" excludes "low-impact fireworks." Mich. Comp. Laws § 28.452(e). "Low-impact fireworks" is defined term as well; it means, for example, "handheld sparkling devices as that phrase is defined under APA standard 87-1, 3.1, 3.1.1.1 to 3.1.1.8, and 3.5." Mich. Comp. Laws § 28.452(e).

In sum, the Act expands the types of fireworks that vendors may sell for private use in Michigan. But the Act also imposes a significant insurance requirement on vendors that choose to enter this newly authorized market.

**II**

On February 1, 2012 (one month to the day after the Act went into effect), eight fireworks vendors brought a constitutional challenge to the insurance coverage requirement in this Court. The same day, Plaintiffs moved for a preliminary injunction. The motion was not, however, accompanied by a supporting brief or a memorandum of points and authorities. A hearing on the motion is scheduled for June 7, 2012.

Since filing their motion, Plaintiffs have filed more than a dozen separate sets of supplemental papers. *See* ECF No. 5 (Steinburg & Pease affidavits, filed February 4); ECF No. 6 (first supplemental memorandum, filed Feb. 11); ECF No. 7 (Stringer affidavit, filed February 15); ECF No. 8 (first supplemental request for hearing, filed February 22); ECF No. 11 (Beltz affidavit, filed February 23); ECF No. 13 (second supplemental memorandum, filed February 26); ECF No. 16 (Towne affidavit, filed March 1); ECF No. 18 (third supplemental memorandum, filed March 13); ECF No. 19 (second supplemental request for hearing, filed Feb. March 13); ECF No. 23 (fourth supplemental memorandum, filed April 9); ECF No. 25 (fifth supplemental memorandum, filed April 16); ECF No. 29 (sixth supplemental memorandum, filed April 24, 2012).

Local Rule 7.1 provides: "Unless the court permits otherwise, each motion and response to a motion must be accompanied by a single brief." E.D. Mich. L.R. (d)(1)(A). Plaintiffs' supplemental filings, while voluminous, are not in the form of a traditional brief or memorandum of points and authorities (with an introductory statement identifying the controlling or most

appropriate authorities for the relief sought, a background section summarizing the pertinent facts, and an argument section expounding on the relevant authorities and applying them to the facts of the case).

Accordingly, consistent with the requirements of Local Rule 7.1, Plaintiffs will be directed to file a brief in support of the motion for a preliminary injunction within seven days of this order. Defendant will be directed to respond within fourteen days. To assist the parties' in briefing on an expedited schedule, a review of the current record follows. Additionally, the merits of Plaintiffs' void for vagueness challenge are addressed.

### III

### A

This case began, as noted, one month after the Act went into effect, when eight fireworks vendors brought a constitutional challenge to the insurance coverage requirement in this Court. The two-count complaint seeks declaratory and injunctive relief. Count one, which seeks declaratory relief, asserts in pertinent part:

> MCL 28.455(3), requiring retailers of consumer fireworks to obtain $10 million in insurance coverage, is invalid and unconstitutional insofar as it impairs Plaintiffs' fundamental right to engage a legal business specifically authorized by statute, without any rational basis or relationship to the protection of public health and safety, thereby violating the Fourth, Fifth and Fourteenth Amendments.

Compl. ¶ 30. Count two, which seeks injunctive relief, asserts:

> MCL 28.455(3) as described above, injure[s] Plaintiff in its pursuit of its established legal and profitable business, insofar as the irrational and onerous $10 million insurance coverage requirement threatens to render Plaintiff's business unprofitable. . . .
>
> Although Plaintiffs might be able to obtain monetary compensation and damages, the law holds that the destruction of an ongoing legal business, along with its goodwill is irreparable and that the mere awarding of damages is not an adequate remedy at law.

*Id.* ¶¶ 33, 35.

The same day the complaint was filed, Plaintiffs moved for a preliminary injunction. Reiterating the Fifth and Fourteenth Amendment claims, the motion asserts:

> There is no scientific authority on which Defendants do or can rely for MCL 28.455(3)'s irrational and onerous $10 million insurance requirement, which has the practical effect of depriving Plaintiffs of all economic benefit of their existing businesses.
>
> Because MCL 28.455(3) impairs Plaintiffs' fundamental right to engage in a legitimate enterprise, it is subject to strict scrutiny. Where Michigan requires retailers of consumer fireworks to obtain insurance coverage in an amount five to ten times greater than that required by any other state, it is clear that MCL 28.455(3) cannot survive strict scrutiny.
>
> For the same reason, even if Plaintiffs' fundamental rights were not impaired by MCL 28.455(3), the statute could not survive rational basis review because the insurance coverage requirement is not rationally related to any risk to the public health, safety, or welfare arising out of Plaintiffs' business activities.

Pls.' Mot. Prelim. Inj. ¶¶ 6–8.

**B**

Three days after filing suit, Plaintiffs made their first supplemental filing, attaching exhibits containing affidavits of two gentlemen. ECF No. 5 (Steinburg & Pease affidavits). These gentlemen testify to the burden that the insurance requirement imposes. Specifically, Mr. Steinburg, an expert witness in pyrotechnics, offers a multi-jurisdictional survey of fireworks laws, observing: "There are 41 states that allow sale and use of some or all types of consumer fireworks permitted by federal regulations. I am aware of three states with statutory insurance requirement to sell consumer fireworks. Two states, Idaho and Rhode Island, require $1 million insurance, and Pennsylvania requires $2 million." Steinburg Aff. ¶¶ 4–5. Mr. Pease, an owner of one of the firms that is a Plaintiff in this case, testifies regarding the burden that the insurance

requirement imposes. He writes: "I have made attempts to cost out and obtain that insurance and have found out that my insurance could triple or more depending on sales." Pease Aff. ¶ 5.

On February 11, Plaintiffs filed their first supplemental memorandum in support of their motion. ECF No. 6. In it, Plaintiffs tentatively identify a vagueness challenge to § 28.455(3)(d), writing:

> Plaintiffs now present the Affidavit of John Stringer of Drayton Insurance . . . . According to Mr. Stringer, the language "per occurrence" is standard in some policies and, according to its ordinary usage within the industry, would apply to every sale made at every location . . . .
>
> There is an arguable contradiction within MCLA 28.455(3) because in its first line it references "each retail location selling consumer fireworks." The net result is that First Amendment issues of vagueness are raised, in addition to Fifth and Fourteenth Amendment issues of due process and rational basis. Neither Plaintiffs nor their attorneys appreciated this potential distinction and interpretation at the time of the filing of their Complaint.

Pls.' Supp. Mem. 2. Plaintiffs do not elaborate on what First Amendment rights are implicated. And, not wishing to advance the vagueness challenge, Plaintiffs conclude the memorandum by noting: "The question of whether the provision might be unenforceable as vague and contradictory is not a determination which the Court must necessarily reach." *Id*. at 3.

An independent review of Mr. Stringer's affidavit reveals that it addresses Plaintiffs' concern. The gentleman does not in fact suggest that "per occurrence" means "per sale." Rather, he testifies that "each retail location" means just that — under the statute, each retail location must maintain $10 million in insurance. He further opines that this requirement may have unintended consequences, explaining: "[T]he Michigan statute's requirement that each retail location must carry public and product liability insurance in the amount of $10 million per occurrence means that fireworks companies with multiple retail locations would have to individually incorporate each retail location and purchase separate policies for each location.

Otherwise, the product-aggregate or general-aggregate limits of a single policy would be spread over multiple locations." Stringer Aff. ¶ 7.

On February 23, Plaintiffs again supplemented their pleadings, filing the affidavit of a third gentleman. ECF No. 11 (Beltz affidavit). This gentleman, another owner of one of the firms that is party to this case, explains: "I am the owner of Great Lakes Fireworks, LLC, a display fireworks company doing business putting on holiday fireworks at 55 locations . . . . I ordinarily purchase insurance coverage for my fireworks display in the amount of $5,000,000, which until this year has been deemed sufficient by the various local governments with whom I do business. Since the passage of the new Michigan fireworks statute, I have already received a request from a municipality that I obtain $10 million in liability insurance." Beltz Aff. ¶¶ 1, 3–4.

On February 26, Plaintiffs supplemented their first supplemental memorandum. ECF No. 13 (second supplemental memorandum). The "addendum to the supplemental memorandum," Plaintiffs explain, is necessary to correct an error in the prior memorandum. They elaborate:

> [The] Supplemental Memorandum of February 11, 2012 suggested that the State Fire Marshal's office was not proceeding with the development of applications and certificates for consumer fireworks sales pending this Court's decision. Based on communications with the Fire Marshal's office and with the Attorney General, that does not appear to be true. While the process is behind schedule, it is ongoing.

Pls.' 2d Supp. Mem. 1–2 (internal citation omitted).

On March 1, Plaintiffs once again supplemented their supplemental exhibits by filing another affidavit of an insurance broker. ECF No. 16 (Towne affidavit). "To my knowledge," the broker writes, "an insurance policy providing coverage of $10 per occurrence, per location, without any product-aggregate or general-aggregate limits is extremely difficult to obtain and if obtained would be very expensive to the business owner and thus be passed on to the consumer." Towne Aff. ¶ 7.

On March 13, Plaintiffs once again supplemented their supplemental memorandums. ECF No. 18 (third supplemental memorandum). Addressing whether the insurance requirement is severable from the rest of the Act, Plaintiffs write:

> The remaining subsections of MCL 28.455 require retailers of consumer fireworks to comply with the requirements of NFPA 101 and NFPA 1124, to be licensed under the general sales tax act, and to have a valid federal taxpayer identification number. When read in conjunction with the other sections of the Act, it is clear that severing only MCL 28.455(3) would leave the remainder of the statute complete and operative.

Pls.' 3d Supp. Mem. 3.

## C

On April 2, Defendant timely filed its first pleading with this Court, moving to dismiss the complaint for failure to state a claim. ECF No. 21. Defendant first argues that the insurance requirement of § 28.455(3)(d) is subject to rational basis review, not strict scruitiny. Defendant further argues the requirement should be upheld because

> the legislative history indicates that the Legislature was well aware of the debate within the industry surrounding the insurance requirement. Many of the Plaintiffs already submitted written and oral testimony to the Legislature in opposition of the $10 million insurance requirement. An early version of the House Bill had the insurance requirement set at $2 million, but subsequent versions in both the House and the Senate raised that threshold to $10 million. This history shows that the Legislature already considered and rejected the same arguments that the Sellers make before this Court.

Def.'s Br. Supp. Mot. to Dismiss 16–17 (internal citations omitted). Addressing Plaintiffs' argument that the statute imposes an insurmountable barrier to entry into the new market for supplying these products, Defendant observes that several hundred of Plaintiffs' competitors disagree:

> As of March 29, 2012, the Fire Marshal has received over 650 applications for certificates required under Section 4 of the Act, Mich. Comp. Laws § 28.454, to sell consumer fireworks. Contrary to the Sellers' assertions, the Act is not having

any significant detrimental effect on the willingness of Michigan businesses to sell fireworks to Michigan's citizens during the summer holiday season.

*Id*. at 5. And addressing Plaintiffs' vagueness argument, Defendant writes:

> The Fire Marshal takes the position that "per occurrence" is an insurance standard phrase meaning "per event" or "per incident," and not "per transaction," or "per sale." In other words, all injuries and damages arising out of a single fireworks accident would be subject to a $10,000,000 cap. The Fire Marshal has confirmed with several national companies specializing in fireworks insurance that such coverage is available.

*Id*. at 10. Defendant concludes by requesting that this Court dismiss the complaint.

One week after the motion to dismiss was filed, Plaintiff responded. ECF No. 22. Contesting Defendant's statutory interpretation, Plaintiffs reference their previously filed expert affidavits and reiterate that "per occurrence" is unconstitutionally vague:

> Defendant takes the position that the "per occurrences" language in the statute means "per event" or "per incident," not "per transaction" or "per sale." But Defendant offered no affidavit or other evidence in support of that position. Further, that position is not reflected in any of the emergency rules attached to Defendant's Motion. Thus, Defendant's *ipse dixit* declaration is unsupported and, according to the affidavits filed by Plaintiff, incorrect. Despite the Fire Marshal's unsubstantiated assertion that they have "confirmed with several national companies who specialize in fireworks insurance that such coverage is available," there is no specification who said what to whom or what question propounded. There is no affidavit. That claim means nothing.

Pl.'s Resp. to Def.'s Mot. to Dismiss ¶ 5. Turning to Defendant's argument regarding rational basis review, Plaintiffs write:

> Plaintiffs agree that the Legislature's decision to require retail fireworks locations to carry mandatory insurance is within its power. But insofar as that power is exercised in irrational, vague, confiscatory manner unrelated to public health, safety or welfare, it should be analyzed under the "rational basis" test. Further, as shown here and in Plaintiffs' contemporaneously filed Supplemental Motion for Preliminary Injunction, the confusion about the meaning of this penal statute and the interpretations of the insurance provision involved, including the riders as "additional insureds" on wholesalers' policies, render the statute, which must be strictly construed, unconstitutionally vague.

*Id*. ¶ 10. Plaintiffs conclude by requesting that the Court deny Defendant's motion.

# D

The same day as Plaintiffs filed their opposition brief, they also filed a supplemental memorandum in support of their motion for a preliminary injunction. ECF No. 23 (fourth supplemental memorandum). Although the memorandum cites no case law, it again argues that the insurance requirement is unconstitutionally vague, asserting:

> The provision itself refers in two different places in one paragraph to the insurance being required "per location" and the insurance being required "per occurrence".
>
> In their Motion to Dismiss, Defendant claims to have interpreted that provision to mean something other than "per sale" or "per transaction," although their purported interpretation utilizes language not in the statute, "incident" and accident.
>
> Plaintiffs point out that this statement by the Attorney General in a pleading before this Court is nowhere set forth in any statutory, legislative, regulatory materials or opinion, including the emergency regulations which were promulgated by Defendant on March 10, 2012.
>
> However, as is shown by the attached affidavits of practicing fireworks insurance brokers Tami Towne and Deborah M. Merlino, regardless of how the Fire Marshall unofficially claims to interpret the statute, it is the insurance companies and the common usages within the industry which will control in the event an injury occurs and a claim is made. According to them, the Attorney General's interpretation of the statute is inaccurate. The result is that, if the Fire Marshall ultimately properly interprets the statutory language "per occurrence" in conformity with the practices of the insurance industry, then it will be impossible for anyone, even the wholesalers, to comply with the statute and no company will issue such a policy. . . .
>
> These post-filing developments lead to an additional argument by Plaintiffs for a Preliminary Injunction against the enforcement of the statute as it relates to the $10,000,000 insurance provision this fireworks season because the statute is void for vagueness. No local fire enforcement official, state police officer, state fire marshal or those acting under their control or at their direction can know whether a particular operation or insurance policy violates the statute, independently of the ability of the insurers to deny coverage in the event that something which has never happened (the Plaintiffs have had no claims) does in fact happen.

Pl.'s 4th Supp. Mem. ¶¶ 8–11, 17.

An independent review of Ms. Merlino's affidavit reveals that Plaintiff's concern is addressed. She does not suggest that Attorney General's interpretation of the statute is inaccurate. Rather, like Mr. Stringer, Ms. Merlino testifies that insurers generally require a policy limit, explaining: "I have marketed the $10 million coverage with 12 insurance companies. None of those companies would write the coverage on a 'per occurrence' basis without an aggregate limit." Merlino Aff. ¶ 5.

One week after filing their fourth supplemental memorandum, Plaintiffs filed their fifth. ECF No. 25 (fifth supplemental memorandum). This memorandum directs the Court to the previously filed affidavit of Mr. Stringer and informs the Court that the gentleman "maintains his position." Pl.'s 5th Supp. Mem. 2.

Ten days later, Plaintiffs filed their sixth supplemental memorandum. ECF No. 29 (sixth supplemental memorandum). Attached is a certificate of liability insurance obtained by a vendor who is not a party to this litigation (American Eagle Fireworks) "which purportedly meets the new statutory requirement." Pl.'s 6th Supp. Mem. 2. Plaintiffs write: "On its face, it does not in fact provide $10,000,000 worth of insurance, although it says it does. On its face, it provides $2,000,000 worth of insurance for each occurrence and $2,000,000 of insurance per location under general liability. Its umbrella liability provides $4,000,000 per occurrence and $4,000,000 for the aggregate. . . . But on its face, the aggregate applies only to the primary location." *Id*.

An independent inspection of the certificate reveals that it does provide $10,000,000 in liability coverage for each occurrence. Specifically, as Plaintiffs acknowledge, it provides $2 million in general liability coverage, $4 million in umbrella liability coverage, and $4 million in excess liability coverage. And it limits the coverage to a particular retail location (the Highway Drive Inn), consistent with the Act's requirement that "each retail location selling consumer

fireworks either shall be added as an additional insured, or public liability and product liability insurance coverage shall be obtained and maintained, in an amount not less than $10,000,000.00 per occurrence." Mich. Comp. Laws § 28.455(3)(d).

**E**

To summarize, Plaintiffs identify two fundamental constitutional challenges to the insurance requirement in their papers. First, Plaintiffs allege, the requirement offends the substantive due process protections of the Fourteenth Amendment because it lacks a rational basis. And second, Plaintiffs allege, the insurance requirement is unconstitutionally vague.

As noted, Plaintiffs have not yet filed a traditional brief in support of their motion. Accordingly, supplemental briefing will be ordered on the substantive due process claim. Because the parties' papers have sufficiently briefed the vagueness challenge, in contrast, the Court will address that claim's merits.

**IV**

"Living under a rule of law entails various suppositions, one of which is that all persons are entitled to be informed as to what the State commands or forbids." *Papachristou v. City of Jacksonville*, 405 U.S. 156, 162 (1972) (internal quotation marks and alterations omitted) (quoting *Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939)). Accordingly, the Supreme Court has long held that "a statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process of law." *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926) (citing *Int'l Harvester Co. v. Kentucky*, 234 U. S. 216, 221 (1914); *Collins v. Kentucky*, 234 U. S. 634, 638 (1914)). The Court explains:

> Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, we insist that laws give the

> person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis, with the attendant dangers of arbitrary and discriminatory applications.

*Vill. of Hoffman Estates v. Flipside*, 455 U.S. 489, 498 (1982) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972)).

The Court cautions, however, that "[t]hese standards should not, of course, be mechanically applied," elaborating:

> The degree of vagueness that the Constitution tolerates — as well as the relative importance of fair notice and fair enforcement — depends in part on the nature of the enactment. Thus, economic regulation is subject to a less strict vagueness test because its subject matter is often more narrow, and because businesses, which face economic demands to plan behavior carefully, can be expected to consult relevant legislation in advance of action.

*Flipside*, 455 U.S. at 498 (footnote omitted); *see also Papachristou*, 405 U.S. at 162 ("In the field of regulatory statutes governing business activities, where the acts limited are in a narrow category, greater leeway is allowed.").

Likewise, "The Court has also expressed greater tolerance of enactments with civil rather than criminal penalties because the consequences of imprecision are qualitatively less severe." *Flipside*, 455 U.S. at 498–99.

The Sixth Circuit adds: "When the persons affected by the regulations are a select group with specialized understanding of the subject being regulated the degree of definiteness required to satisfy due process concerns is measured by the common understanding and commercial knowledge of the group." *Fleming v. U.S. Dep't of Agric.*, 713 F.2d 179 (6th Cir.1983).

In this case, Plaintiffs challenge the term "per occurrence" as vague. Contrary to Plaintiffs' contention, "occurrence" is a commonly used term in the insurance industry. The

Supreme Court notes, for example, that "[commercial general liability] insurance has traditionally been sold in the United States on an 'occurrence' basis, through a policy obligating the insurer 'to pay or defend claims, whenever made, resulting from an accident.'" *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 771 (1993); *see generally* Tom Baker, *Insurance Law and Policy*, 388–93 (2d ed. 2008) (discussing standard insurance policies providing coverage for "occurrences"); John Dobbyn, *Insurance Law in a Nutshell* 44 (West 2003) (noting commercial general liability policies "require that the injury result from an occurrence" and that occurrence "is defined in the standard policy as an accident"); Robert E. Keeton & Alan I. Widiss, *Insurance Law* § 5.10(d)(1), at 594–96 (3d ed. 2003) (discussing liability coverage for occurrences).

Liability insurers widely understand the term "per occurrence." It means "per accident." Reinforcing this conclusion are the affidavits of Plaintiffs' own insurance professionals, Mr. Stringer, Ms. Towne, and Ms. Merlino. None of these individuals testify that "per occurrence" is vague. None testify that it could mean "per sale" rather than "per accident." Instead, their testimony concerns the difficulty of obtaining an insurance policy because of the lack of an aggregate policy limit. Providing $10 million in coverage "per occurrence" is not the problem they suggest; the problem is unlimited potential liability. Section 28.455(3)(d) is not unconstitutionally vague.

As this challenge is not viable, in Plaintiffs' supplemental brief attention should be directed to their substantive due process claim.

**IV**

Accordingly, it is **ORDERED** that Plaintiffs are directed to file a brief in support of their motion for a preliminary injunction within seven days of the date of this order. The text of the brief, including footnotes and signatures, may not exceed 20 pages.

It is further **ORDERED** that Defendants are directed to file a response brief not later than fourteen days from the date that Plaintiffs' brief is filed. The text of a brief, including footnotes and signatures, may not exceed 20 pages.

It is further **ORDERED** that Plaintiffs are directed to file a reply brief not later than seven days from the date Defendant's response brief is filed. The text of the reply brief, including footnotes and signatures, may not exceed 5 pages.

Dated: May 4, 2012

                                            s/Thomas L. Ludington
                                            THOMAS L. LUDINGTON
                                            United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on May 4, 2012.

                              s/Tracy A. Jacobs
                              TRACY A. JACOBS